## FEDERAL SUGAR REFINING CO. v. MIDLAND GROCERY CO.

Circuit Court of Appeals, Second Circuit.
Dec. 19, 1927.

No. 44.

1. **Sales ⟺363—Evidence of fraud in failing to return original sugar sold in accordance with resale contract held insufficient for jury.**

In action to recover purchase price of certain sugars evidence as to plaintiff's fraud in failing to deliver sugars originally sold by defendant to it in accordance with contract for resale thereof *held* insufficient for jury.

2. **Sales ⟺445(5)—Evidence of notice to seller of breach of warranty to deliver specified sugars held insufficient for jury (Personal Property Law N. Y. § 130).**

In action to recover purchase price of certain sugars, wherein defendant claimed breach of warranty, in that plaintiff failed to deliver specified sugars in accordance with resale agreement, evidence as to notice to seller of breach of warranty *held* insufficient for jury within meaning of Personal Property Law N. Y. (Consol. Laws, c. 41) § 130.

3. **Sales ⟺179(1)—Buyer of sugar under resale agreement excused seller's original acceptance by accepting delivery with knowledge portion was not sugar originally sold (Personal Property Law N. Y. § 129).**

Buyer of sugar under agreement for resale of sugars originally sold by it, by its action in accepting sugars with full knowledge that portion was not sugar originally sold, excused seller's original acceptance thereof, under Personal Property Law N. Y. (Consol. Laws, c. 41) § 129.

4. **Sales ⟺363—Evidence as to buyer's accepting seller's allocation of sugars to certain contracts in accordance with resale agreement held for jury.**

In action to recover purchase price of certain sugar sold on resale agreement to original seller, evidence as to defendant's having accepted plaintiff's allocation of sugars returned to certain contracts *held* sufficient for jury.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Midland Grocery Company against the Federal Sugar Refining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Writ of error by the defendant to a judgment of the District Court for the Southern District of New York in favor of the plaintiff in the sum of $87,420.77 for goods sold and delivered.

The complaint was for the purchase price of certain sugars sold by the plaintiff to the defendant between September 15 and December 1, 1920. Of these, 12,924 bags, later reduced to 12,917, were alleged to have been sold at 15½ cents a pound, 1,800 at 26 cents, and 4,648 at 26½ cents. The complaint admitted the payment of $304,394.49, leaving a balance due of $65,895.51, later reduced to $65,500.01. The answer denied the allegations of the complaint, and pleaded as a defense that the shipment of the 4,648 bags was fraudulently made, because the contract had been to resell sugars which had originally been sold by the defendant to the plaintiff, because the plaintiff had represented that the sugars returned were of the original shipment, and because 2,116 of the bags delivered by the plaintiff had not originally been sold by the defendant to it, as the plaintiff well knew. The answer also pleaded two counterclaims, one for the fraud alleged in the defense, and the other that the plaintiff had warranted the bags to be of the original shipment by the defendant.

The facts as shown upon the trial were that the defendant, a manufacturer of sugar, had sold directly to the plaintiff on the 15th day of May, 1920, 6,000 bags of sugar at 26 cents, less 2 per cent. discount, f. o. b. refinery, Yonkers. These were called the "direct" sugars. The plaintiff had also bought from certain sugar merchants, Lamborn & Co., on December 12 and 17, 1919, 41,000 bags of sugar at prices varying from 14½ to 15 cents a pound, f. o. b. refinery Philadelphia or New York. On May 6, 1920, it had bought 2,400 more bags from Lamborn & Co. at 25½ cents. All these contracts had been performed, and on September 15, 1920, the plaintiff claimed still to have on hand 12,917 bags, received by it as December Lamborn sugars, 1,800 bags, received as May Lamborn sugars, and 4,648 bags, received as "direct" sugars, and the price of sugar had by that time fallen to 15 cents.

On that day some of the plaintiff's representatives went to Lamborn & Co. and complained that the sugars delivered by them were imperfect in quality. They made the same complaint to the defendant as to the 4,648 bags of "direct" sugars. All the sugars delivered under the Lamborn contracts had come from the defendant, being sent direct to the plaintiff from the refinery, and Lamborn's representatives went with the plaintiff to the defendant's office, and had an inter-

view with one Lowry, its sales manager. The parties differed as to the substance of the interview at that time. Both sides admitted that Lowry agreed to take back the 4,648 bags of "direct" sugars at the price paid, plus half a cent a pound, to cover freight and expenses. They disagreed as to whether the price included the original discount. They agreed that Lowry also promised to take back the Lamborn sugars, but disagreed as to whether the price to be paid was what the plaintiff had paid Lamborn, or what Lamborn had paid the defendant.

A second meeting took place on October 8th, when Mr. Spreckels, the defendant's president, was present, at which time one of the carloads had been returned to Yonkers. The substance of this interview was also in dispute between the witnesses and upon the same lines. In order that both sides should have authentic samples before them, the meeting was adjourned until October 11th, when there was another interview. On the 14th the defendant repaid by check to Lamborn for the plaintiff's benefit 70 per cent. of its billing price to that company, 23.65 cents, upon 1,800 bags of May Lamborn sugars, but this was returned on the 16th by Lamborn as not in accordance with the understanding.

A fourth meeting took place on the 27th, at which other samples were before the parties, another on the 29th or 30th, and a final meeting on November 4th, when they attempted to put an agreement into writing. The defendant proposed a contract by which it agreed to pay $176,260.95 for all the Lamborn sugars. This was unsatisfactory, and a substitute was signed, by which it was agreed that, without finally fixing the rights of the parties, the sugar "which is now in the possession of the Federal Sugar Refining Company heretofore shipped to that company by the Midland Grocery Company shall be retained by the Federal Sugar Refining Company as its own property." For this $173,544.45 was agreed to be paid, less $10,-075, already received, the payment to be received by the plaintiff without prejudice. This money the defendant paid to Lamborn, and Lamborn to the plaintiff.

At this time all the Lamborn sugars had been received at the defendant's refinery, and the original shipment of 4,648 bags had been paid for; the defendant deducting the 2 per cent. discount. The $10,000 deducted from the payment mentioned in the contract of November 4th the defendant had paid on September 23d for 650 bags of Lamborn sugars, and it had been calculated upon the full price paid by the plaintiff to Lamborn. The defendant's position was that this had been paid by Lowry, without the knowledge or direction of Spreckels, and was unauthorized. Two cars of the "direct" sugars had been paid for, without deducting the discount.

The defendant proved in great detail the method by which it shipped its sugars. The buyer's brokers made out a withdrawal order, which mentioned the contract against which the shipment was to be applied, the number of bags, and the consignee's name and address. When the defendant received this order, it gave it a serial number and sent a copy to the refinery. Upon the information contained in this order all the bags were marked by a stencil, which showed the serial order or contract number, the consignee's name and address, and the routing. The bags were then delivered to a lighter alongside the refinery where each consignment was separately piled. The defendant then prepared a bill of lading for each carload, containing the contract or order number on which the consignee paid the accompanying invoice by draft attached.

When the bags were returned to Yonkers, out of the "direct" sugars, the defendant proved that over 1,600 bags were marked for other contracts and for other consignees, and out of the Lamborn sugars over 2,500 bags. The plaintiff had accepted all these bags as performance under the contracts, and had returned them on the theory that its acceptance made a valid delivery, despite the diversion of the bags by the carriers.

The jury brought in a verdict for the plaintiff for the discount deducted upon the "direct" sugars and for the price paid by the plaintiff to Lamborn on the Lamborn sugars. The District Judge overruled the defense and dismissed the counterclaims. Being foreclosed on the questions of fact, on this writ the defendant raises the following points: As to the "direct" sugars, that in returning bags which had not been delivered to it the plaintiff was guilty of a fraud, because it knew that they were not within the terms of the contract of resale. This raised at once a defense to the recovery of the discount, and a counterclaim for damages. It was also a breach of "warranty." As to the Lamborn sugars, that to the extent of 2,500 bags the plaintiff had not performed at all, and further that it was impossible to allocate any of the 14,717 bags returned between the Lamborn contracts of December and the May contract for 2,400 bags at the higher price. The defendant also complained of certain por-

tions of the judge's charge and of the admission of certain evidence.

Henry A. Wise and Ernest A. Bigelow, both of New York City, for plaintiff in error.

McLaughlin, Russell & Sprague, of New York City (Rufus W. Sprague, Jr., of New York City, of counsel), for defendant in error.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). It may be that the defendant has suffered an injustice at the hands of the jury, but we have nothing to do with the questions of fact involved, and must assume that the purchase price agreed upon included the discount upon the "direct" sugars and Lamborn's price to the plaintiff on the Lamborn sugars. We have to do, therefore, only with the plaintiff's performance, and the supposed rights arising from its failure to perform.

[1] We think that the judge correctly overruled the defense and dismissed the counterclaims. There was clearly no evidence which could support a charge of fraud. The defendant's delivery "f. o. b. refinery" under the original sale was indeed complete, when the bags were delivered to the carriers, which later mixed the parcels. The defendant was not concerned with whether each buyer got his own bags, and we may assume for argument that it would have been within its rights in refusing any bags tendered by the plaintiff on the resale, which were not parts of the original parcels marked for it. However, that is very far from saying that, because the plaintiff knew that the bags were those delivered to other buyers, it was a fraud to tender them upon the resale. The bags, with one or two exceptions, were all of the defendant's manufacture, and bore the marks upon them of their original destination, so as to be at once distinguishable by the defendant. So far as appears, they contained exactly the same kind of sugar as the bags marked for the plaintiff, and the plaintiff very naturally treated them as fungibles. If it wished to prove a fraud, the defendant had the burden of showing that there was some substantial difference between the bags, and that the plaintiff knew that there was; in short, that it meant to palm off sugars which, if the defendant knew it in time, would be rejected. There was not the slightest ground in fact for such an inference.

Finally, it is entirely clear that the defendant did not object to the delivery on any such ground after it learned the truth. Admitting that the payment was made before it had opportunity to examine, the only suggestion of protest is the language of Mr. Bigelow, the defendant's counsel, to Campbell, the plaintiff's president, on October 27th, that it looked to him as though Campbell had been getting money under false pretenses, and that he had better get a lawyer. This was made during the controversy over the Lamborn sugars, and was followed by the advent of Campbell's lawyer, to whom, so far as appears, the assertion was not repeated. The negotiations continued without any further suggestion of the sort, and the defendant made no claim for damages until long afterwards. It was a mere makeweight, thrown out in the course of the controversy, designed for such effect as it might have in negotiation; certainly not intended as a serious assertion of so serious a charge. Moreover, as we shall show, when the very question was presented in respect of the Lamborn sugars, the defendant by its conduct conclusively showed that the mixing of the bags was a matter of entire indifference to it.

[2] As to the breach of warranty, the case stands on a little different basis. We pass any question as to whether any damages were proved, the defendant having failed to show that the bags resold were different in value from those originally delivered. It is enough that the testimony just quoted of Mr. Bigelow is the only evidence which can be remotely thought to be "notice to the seller of the breach" of warranty, within section 130 of the New York Personal Property Law (Consol. Laws, c. 41). It certainly did not satisfy that section. American Mfg. Co. v. Fleet Corporation, 7 F.(2d) 565 (C. C. A. 2). Thus there was no question of fact to leave to a jury on either the defense or the counterclaims.

[3] The remaining question is of the plaintiff's performance of its contract to redeliver Lamborn sugars. Strictly this contract required the tender of bags which had been marked for the plaintiff and delivered by the defendant to the carriers for it. This to a large extent the plaintiff did not perform. It was, however, at once apparent to the defendant, upon inspection of the bags, which of them had originally been delivered to other consignees, and had by some mistake been mixed. The plaintiff's tally was correct, but the identity had been lost in transit from the refinery. These bags the defendant,

however, accepted as its own by the contract of November 4th, knowing that the plaintiff had received them as a good delivery. Moreover, having with full knowledge accepted them, it made no complaint, sold them, and for many months thereafter did not suggest that which could be excused, and which the defendant necessarily did excuse by its acceptance. Section 129, New York Personal Property Law. For this conclusion we need not, therefore, rest upon the language attributed to Mr. Spreckels by the plaintiff; or upon the theory of the trial judge that the original acceptance by the plaintiff of sugars delivered to other consignees affected the defendant's right to insist upon the redelivery of the plaintiff's own bags.

While, however, this assent was conclusive, so far as concerns the substitution of the bags accepted by the plaintiff for those delivered to it, it does not answer the other objection that the plaintiff has not proved under which of the Lamborn contracts it had received the several bags. The matter is of importance only as respects the May contract, upon which the plaintiff returned 1,800 bags, under claim that that number of the 2,400 received by it upon that contract were defective. It had to show that the returned bags were part of those so received, and it may be assumed arguendo that upon that point the proof from its own records broke down.

As to six hundred of these the documents leave no doubt. Exhibits 94(7) and 108(5) are invoices sent to the plaintiff by Lamborn on August 17, 1920, and paid by it. These together call for 2,400 bags, at 25½ cents, and completed the delivery under the May contract; there being no other sale on which they would fit. They bore order numbers 50465 to 50468, inclusive. Exhibit 29, the third of those sheets which the defendant prepared as a schedule of the bags reshipped and accepted by it, shows that 600 had order numbers 50465, 50467, 50468 and that they were marked for the plaintiff.

This does not, however, cover the remaining 1,200 bags. As to these the proof is that the plaintiff sent to Lamborn invoices for each carload of sugars after it had been reshipped. Some of these are in evidence. Exhibits 36 and 38. Further, it was undisputed that, when Lamborn received these invoices, it at once sent to the defendant copies of their substance. Troup, a member of Lamborn & Co., and Moora, an employee,

both so swear, and Spreckels admitted that, although the invoices first went to Lamborn, they then in turn came to the defendant, though he personally had never seen them. Therefore, even though the plaintiff's assertion that it sent copies direct to the defendant was untrue, the defendant knew what the plaintiff claimed upon each carload. Exhibits 35, 37, and 39 are instances of Lamborn's copies or debit notes. The contents of all carloads shipped to the defendant are contained upon Exhibit 29, so that the defendant knew just what bags the plaintiff was claiming to have been received by it under the May Lamborn contract, and the prices which it had paid Lamborn for them.

Furthermore, 600 of the returned bags had been originally consigned to Rasmussen under order 50463, 177 to Bierhaus under order 50469, and 423 to Seton under orders 50459 and 50460. All these were routed to Illinois and Indiana, near the plaintiff's warehouses. The orders were marked serially in order of their receipt by the sales department, and there was some ground for assuming, from the closeness of the serial numbers to those of the May contract, that the 1,200 bags so returned had been mixed en route and delivered under the May contract. At least, this gave color to the plaintiff's assertion of that fact, though it would not alone prove it.

[4] The parties having this knowledge and these assertions before them, and, as we must assume after verdict, having made a contract by which the defendant was to pay what the plaintiff had paid Lamborn, the judge was justified in leaving it to the jury, as he did, to say whether the defendant had not by its conduct accepted the plaintiff's allocation. True, there was no complete estoppel, as there was as to the substitution of other bags for those delivered at the refinery. The evidence does not show positively that the defendant ever knew whether the 1,200 bags had in fact been delivered under the May contract. But it did have grounds for so supposing, as we have shown, and its continued silence and sale of the sugars in the face of the plaintiff's allocation and claim was sufficient evidence for a finding that it agreed not to press for further proof.

The charge respecting the possible obligations of the defendant to Lamborn, if doubtful, would not in any event justify a reversal.

Judgment affirmed.